MADDOX, Justice.
The question here presented is whether the trial court erred in impressing an equitable lien upon a residence in favor of one who had made extensive repairs to the house pursuant to an alleged oral agreement.
When her mother died in 1937, the appel-lee, Maxine Culpepper, then two years of age, came to live with her maternal aunt, Opal Moore, and husband, B. Ray Moore, the appellant, at the Moores’ home in Montgomery. The Moores treated the appellee as a daughter and she treated them as her parents. The appellee lived with the Moores for many years and, in fact, she and her husband, after their marriage in 1954, continued to live with the Moores. The appellee and her husband later moved to Georgia and lived there until the appellee’s husband was killed in an automobile accident.
After the death of her husband, the ap-pellee moved back to Montgomery and once again resided with the Moores. After returning to Montgomery, the appellee financed certain improvements to the Moores’ house, using money she had received as insurance benefits payable because of her husband’s death. There is a dispute between the parties as to the existence of an “oral agreement” under the terms of which, purportedly, the Moores were to repay the appellee for the improvements or, in the alternative, they were to devise the house to the appellee. Appellee claimed there was such an agreement. The appellant, Mr. Moore, on the other hand, denied there was an agreement and denied any participation in the improvement plans, although he admitted that he did not express to the appellee any objections concerning the improvements.
Mrs. Moore died in 1978, and the relationship between Mr. Moore and the appellee began to deteriorate rapidly. Apparently, the cause of the deterioration was a disagreement over the appellee’s conduct of a romantic affair and Mr. Moore’s objection to the appellee’s allowing her male friend to spend the night with her in the Moore home. Eventually, Mr. Moore had the ap-pellee evicted from the Moore residence.
The appellee filed suit against the appellant and requested that the trial court enforce the alleged oral contract or, in the alternative, that the court establish an equitable lien on the residence in the amount of the cost of the improvements in her favor. After a nonjury trial, the court found that the oral agreement was unenforceable because it violated the statute of frauds, but ruled in favor of the appellee on the equitable lien, and established a lien in the amount of $18,467.33.
The appellant timely appealed from the trial court’s ruling on the equitable lien claim.
The appellant raises one issue on appeal: Did the trial court err in impressing an equitable lien on the residence of the appellant when the appellant was not shown to be guilty of any wrongdoing in procuring the improvements to the residence?
The trial court’s order reads, in part, as follows:
This case involves a dispute over an alleged oral agreement between plaintiff, defendant, and his deceased wife concern *110 ing certain improvements made to defendant’s residence and paid for by plaintiff. The agreement urged by plaintiff is that if the plaintiff would pay for the improvements made on the residence the Moores would either repay the money or deed the residence to plaintiff.
Appellant contends that the court’s order shows that the appellee was not entitled to an equitable lien. He cites this Court’s decision in Costanza v. Costanza, 346 So.2d 1133 (Ala.1977), in support of his position, and specifically quotes and emphasizes the following portion of the Costanza decision:
[A] court is authorized to exercise its equity power to impress a lien upon real property as security for a debt only where the person against whose interest the Hen is declared and enforced is guilty of some wrongdoing in procuring the loan or service by which the debt is created. Our cases make clear that, whether the equitable grounds essential to give the “equitable lien” principle a field of operation are expressed in terms of “fraud,” “unclean hands,” or “unjust enrichment” mere passive conduct on the part of the party against whose interest the lien [is] sought is not sufficient. [Emphasis added.]
Appellant then argues:
In the case sub judice, appellant Ray Moore was simply not guilty of any wrongdoing in connection with the house improvements paid for by Maxine Cul-pepper. As the trial court expressly found, Mr. Moore simply did not tell Maxine not to make the improvements. This conduct was, in Mr. Justice Jones’ words, “mere passive conduct on the part of the party against whose interest the lien sought,” and certainly was not the kind of misconduct which Costanza teaches us is necessary to sustain an equitable lien.
Appellant’s argument is based upon two suppositions: (1) The trial court did not consider any of the evidence presented regarding the oral agreement, and (2) the court found, as a fact, that the appellant, “did not object.”
Appellee, on the other hand, argues that the trial court refused to enforce the oral agreement because it was barred by the statute of frauds, but that the court impliedly found that an oral agreement, in fact, was made, that the appellant was present when the agreement was made, and “because of the reliance of Mrs. Culpepper on the agreement, an equitable lien should be established in her favor.”
We, like the parties, cannot, by reading the order, determine specifically what the court found and what evidence was considered. Because of that fact, we remand the cause for a clarification of what evidence the trial court, in fact, considered.
By remanding the cause, we should not be understood as holding that the trial court cannot consider evidence of the alleged oral agreement in determining whether the appellee was entitled to an equitable lien. The terms of an oral agreement, if relevant, may be admissible as evidence, even though the agreement itself might be unenforceable. 37 C.J.S. Frauds, Statute of § 280 (1943). Furthermore, the alleged oral agreement may be unenforceable only insofar as it purported to affect an interest in “lands, tenements or heredita-ments.” (Code 1975, § 8-9-2), and might be enforceable as an unsecured obligation.
If we could determine that the court reached the right result for the wrong reason, we would affirm, but we frankly cannot determine from the court’s order what specific findings it made to support its judgment that an equitable lien was proper. Consequently, we must remand the cause to that court with directions to make specific findings of fact in the cause in view of the principles of law we have set forth herein, and file with this Court within a reasonable time (not to exceed 56 days after’ the issuance of this Court’s mandate), the specific findings directed to be made.
REMANDED WITH DIRECTIONS.
FAULKNER, JONES, SHORES, BEAT-TY and ADAMS, JJ., concur.
TORBERT, C. J., and ALMON and EM-BRY, JJ., dissent.